**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 14-60-DLB-JGW**

**DEBORAH HOLLY SHELDON, et al.**                                    **PLAINTIFFS**


**vs.**                    **MEMORANDUM OPINION AND ORDER**


**ALLISON LUNDERGAN GRIMES, et al.**                               **DEFENDANTS**

**************************

## I.      Introduction

This matter is before the Court on Plaintiffs' Motion for Temporary Restraining Order (Doc. # 5), in which Plaintiffs ask the Court to prevent Defendants from enforcing two recently amended Kentucky statutes, KRS § 117.085(10) and KRS § 117.086(7).  Plaintiffs assert that these amended statutes, which prohibit the State Board of Elections from disclosing the names and temporary addresses of absentee voters prior to an election, infringe upon their constitutional rights to free speech and association.  Plaintiffs then argue that issuance of a temporary restraining order would be appropriate at this juncture because they are likely to succeed on the merits of their claims.

On April 28, 2014, the Court heard oral argument on the Motion.  Plaintiffs were represented by Steven J. Megerle.  Defendant Jack Conway, Kentucky Attorney General, was represented by Jacob Walbourn.  Defendant Allison Lundergan Grimes, Kentucky Secretary of State, was represented by Lynn Zellen.   Jeffrey Mando represented Defendants Rae Jean Poe, Bracken County Clerk, Jack Snodgrass, Campbell County

Clerk, and Rita Spencer, Pendleton County Clerk. Official Court Reporter Lisa Wiesman recorded the proceedings. At the conclusion of the hearing, the Court denied Plaintiff's Motion (Doc. # 5). By this Memorandum Opinion and Order, the Court provides its reasons for doing so.

At the heart of this case lies one simple question: Under the First Amendment, does the government have a duty to disclose information to candidates in order to facilitate their campaign efforts? The Court thinks not. The First Amendment is a prophylactic measure that prohibits the government from chilling the right to speech and association. *See, e.g., United States v. Alvarez*, 132 S. Ct. 2537, 2544 (2012); *Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 116 (1991); *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964). As explained herein, the First Amendment has never been read as requiring the government to disclose information in its possession simply because doing so would make speech and association easier or more effective. Because Plaintiffs do not have a constitutional right to access the sought-after information, they have not demonstrated that they have a substantial likelihood of succeeding on the merits of their claim. Accordingly, Plaintiffs' Motion for Temporary Restraining Order (Doc. # 5) be, and is hereby, **denied**.

## II.    Factual Background

Plaintiff Deborah Holly Sheldon is a candidate for the Republican nomination for Kentucky State Senator of the 24th Senate District, comprised of Bracken, Campbell and Pendleton counties. Sheldon and her co-Plaintiff, the "Friends of Deb Sheldon" campaign committee, sought to obtain a list of voters who had submitted absentee ballot applications

for the upcoming primary election.  Plaintiffs hoped to reach absentee voters by mailing palm cards and other campaign literature to the addresses listed on the ballot application, which does not necessarily match the voter's registered address.  However, the Bracken, Campbell and Pendleton County Clerks uniformly denied their requests, citing KRS § 117.085(1) and KRS § 117.086(7).

During the 2013 Regular Session, the General Assembly amended two statutes governing absentee voting procedures.  KRS § 117.085 was amended to include the following language:

> Notwithstanding the provisions of the Kentucky Open Records Act, KRS 61.870 to 61.884, the information contained in an application for an absentee ballot shall not be made public until after the close of business hours on the election day for which the application applies.

Ky. Rev. Stat. Ann. § 117.085(10).  KRS § 117.086 similarly provides as follows:

> Notwithstanding the provisions of the Kentucky Open Records Act, KRS 61.870 to 61.884, each list of all persons who return their absentee ballots by mail or cast their ballots in the clerk's office or other designated and approved place shall not be made public until after the close of business hours on the election day for which the list applies.

These amendments prevent Plaintiffs from obtaining the requested information until the day after the primary election, at which point the data cannot be used for campaign purposes.

Plaintiffs filed a Complaint (Doc. # 1) against the Commonwealth of Kentucky, Kentucky Attorney General, Kentucky Secretary of State, Bracken County Clerk, Campbell County Clerk and Pendleton County Clerk. Plaintiffs' Complaint ultimately requests three forms of relief: (1) issuance of a temporary restraining order; (2) compensatory damages pursuant to 42 U.S.C. § 1983 and § 1988 for violation of their First Amendment rights; and (3) declaration of rights as to the constitutionality of KRS § 117.085(10) and KRS §

117.086(7). Plaintiffs also filed a Motion for Temporary Restraining Order (Doc. # 5), which was fully briefed and ripe for review at the time of oral argument (Docs. # 17 and 20). Although consideration of the Motion requires some inquiry into the merits of this action, the parties declined to let the Court condense its analysis pursuant to Federal Rule of Civil Procedure 65(a)(2). Accordingly, the Court's opinion will only address the Motion for Temporary Restraining Order.

### III.   Standard of Review

When deciding whether to issue a temporary restraining order or preliminary injunction, the district court must consider the following four factors:

(1) whether the movant has demonstrated a strong likelihood of success on the merits;

(2) whether the movant would suffer irreparable harm;

(3) whether issuance would cause substantial harm to others; and

(4) whether the public interest would be served by issuance.

See *Suster v. Marshall*, 149 F.3d 523, 528 (6th Cir. 1998). These "are factors to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

When analyzing a motion for temporary restraining order or preliminary injunction, "the 'likelihood of success' prong is the most important [factor] and often determinative in First Amendment cases." *Jones v. Caruso*, 569 F.3d 258, 277 (6th Cir. 2009); *see also Aristotle Pub. v. Brown*, 61 F. App'x 186, 188 (6th Cir. 2003)(affirming the district court's decision not to issue a preliminary injunction because movant could not demonstrate that it was likely to succeed on the merits without also showing that its First Amendment rights

4

had been infringed).  "[T]o the extent that [the moving party] can establish a likelihood of success on the merits of its First Amendment claim, it also has established the possibility of irreparable harm as a result of the deprivation of the claimed free speech rights." *Connection Dist. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)(*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)). After all, the United States Supreme Court has repeatedly recognized, "'[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Id.* (*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

## IV.    Analysis

### 1.    Movant's Likelihood of Success on the Merits

#### a.    What rights are protected by the First Amendment?

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  This broad guarantee protects "the right to utter or print, [ ] the right to distribute, the right to receive and the right to read."  *Griswold v. Connecticut*, 381 U.S. 479, 483 (1965)(*citing Martin v. City of Struthers*, 319 U.S. 141, 143 (1943)).  The First Amendment also guarantees freedom of association, which includes the right to express one's attitudes or philosophies by membership in a group.  *Id.* (*citing NAACP v. Alabama*, 357 U.S. 449, 462 (1958)). Although this freedom of association is not specifically mentioned in the Constitution or the Bill of Rights, it is a "form of expression of opinion" and "its existence is necessary in making the express guarantees fully meaningful."  *Id.*

Although the right to receive information "'is an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution," it is more narrow than the right of free speech from which it originates. *Martin v. U.S. E.P.A.*, 271 F. Supp. 2d 38, 47 (D.C. Cir. 2002). "While the First Amendment protects an individual's right to speak on whatever subject he or she chooses, [it] does not protect an individual's right to receive information on every subject." *Id.* This is particularly so when an individual seeks access to government information. *See id.* (concluding that Plaintiff did not state a First Amendment violation simply by alleging that his request for government information was denied); *Aristotle Pub. v. Brown*, 61 F. App'x 186, 188 (6th Cir. 2003)(affirming the district court's decision not to issue a preliminary injunction because "there is no clear authority for finding a constitutional right of access to voter records"); *Houchins v. KQED*, 438 U.S. 1, 16 (1978)("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control.").

### b. Have Plaintiffs' First Amendment Rights Been Infringed?

In their briefs, the parties vigorously dispute whether this case truly implicates the First Amendment. Plaintiffs maintain that the amended statutes silence their "right to associate, politic and promote [Sheldon's] candidacy with a specific, distinct and likely group of voters." (Doc. # 5 at 6). Defendants insist that "these regulations are not aimed at speech, political or otherwise, but [rather at] the distribution of information in the possession of the Commonwealth." (Doc. # 17 at 4). Accepting either of these positions would dictate the rest of the Court's analysis. If the Court determined that the challenged statutes infringed upon Plaintiffs' rights to speech and association, the Court would have

to evaluate the statutes under strict scrutiny. By contrast, there would be no need to subject the statute to any form of review if the Court adopted Defendants' position.[1] For this reason, the Court felt it necessary to determine, as a threshold matter, whether the amended statutes did in fact infringe upon Plaintiffs' First Amendment rights, and if so, how.

During oral argument, Plaintiffs asserted that the statutes infringe upon their rights to speech and association by prohibiting effective communication with absentee voters. In support of this position, Plaintiffs pointed out that available voter registration lists include the address where each individual is registered to vote, but not the address listed on the individual's absentee ballot application. Because the challenged statutes prohibit disclosure of this information until after the election, Plaintiffs cannot send mailers, palm cards and other campaign literature to the address where the voter will receive his or her absentee ballot.

Plaintiffs behave as though this statute muzzles them from communicating with absentee voters at all, but the Court is skeptical of this position. In arguing that there is such an infringement of rights, Plaintiffs relied on cases that actually support the opposite conclusion. In *Brinkman v. Budish*, a federal district court invalidated a state statute that prohibited former General Assembly members from representing clients on any matter before the General Assembly for one year after leaving its service. *See* 692 F. Supp. 2d 855, 863 (S.D. Ohio Feb. 17, 2010). That court reviewed the statute under strict scrutiny

_____

[1] In their Response, Defendants indicate that rational basis review is appropriate because Plaintiffs' First Amendment rights are not implicated. This is not quite accurate, as failing to establish an infringement of First Amendment rights ends the analysis. *See, e.g., Martin v. U.S. E.P.A.*, 271 F. Supp. 2d 38, 49 (D.C. Cir. 2002). Defendants corrected this statement during oral argument, asserting that some sort of First Amendment infringement is necessary to trigger any form of review.

because it "severely burdened" an advocacy group's First Amendment rights by prohibiting its use of a former General Assembly member as its advocate. *Id.* In this case, by contrast, the Court does not see how the statutes at issue burden Plaintiffs' speech and association rights at all. The Kentucky statute simply prohibits the County Clerks from giving Plaintiffs information that would be used to easily locate absentee voters. However, the statute does not prevent Plaintiffs from contacting absentee voters altogether. In fact, Plaintiffs remain free to engage any and all Republican voters within the 24th Senate District in any way they see fit.

Plaintiffs acknowledged that the statute did not prohibit them from using other common campaign techniques, but they insisted that they would not be able to reach absentee voters with these strategies. However, individuals absent from their registered addresses for long periods of time are likely to arrange for mail to be forwarded, either by relatives still residing at that address or through the United States Postal Service. Voters residing elsewhere may also return to their registered address on a regular basis. For example, college students often use their registered address as a "home base" for correspondence. Because such arrangements are commonplace in today's society, the Court asked Plaintiffs why they felt that absentee voters would not receive information sent to their registered address. In rather conclusory fashion, Plaintiffs responded that the information was unlikely to be forwarded. Not only does this response erroneously imply that formal and informal mail forwarding practices are unreliable, it suggests that Plaintiffs are dependent on the mail to communicate with absentee voters. This is simply not true. As the Court noted during oral argument, nothing precludes Plaintiffs from canvassing neighborhoods. By speaking with registered Republican voters, Plaintiffs may discover

whether any relatives are currently away, and if so, whether they plan to request an absentee ballot. Plaintiffs may then ask voters to forward the information to their absent relatives. For these reasons, the Court concludes that the statutes do not infringe upon Plaintiffs' rights to speech and association.

Finally, Plaintiffs urged the Court to follow *Meyer v. Grant*, in which the United States Supreme Court invalidated a statute prohibiting the use of paid petition circulators. The *Meyer* Court found that the statute burdened political speech because it limited the number of voices to convey the message, as well as the hours that those voices could speak, thus limiting the size of the audience. 486 U.S. 414, 422-23 (1988). Plaintiffs cite this case for the proposition that "[t]he First Amendment protects appellees' right not only to advocate their cause but also to select what they believe to be the most effective means for so doing." *Id.* at 424. Plaintiffs suggest that the challenged statutes burden their right to select the most effective means for conveying their message. Presumably, the 'means' to which Plaintiffs refer is sending information to the addresses listed on absentee voter applications.

Although there is no case law defining 'means,' as that term is used in *Meyer v. Grant*, the Court believes that Plaintiffs stretch this concept too far. There is no doubt that Plaintiffs may use the mail as a means to communicate with registered Republican voters. However, that is not exactly the issue in this case. Here, the Court is concerned with whether Plaintiff may send her literature to these specific addresses. This begs the question: Do Plaintiffs have a right of access to this information? And if so, what is the source of that right?

Bearing these questions in mind, the Court asked Plaintiffs to respond to Defendants' argument that there is no constitutional right to access this information. Although Plaintiffs asserted that such a right did exist, they were unable to provide supporting case law for that proposition. Plaintiffs argued that the Kentucky Open Records Act manifested a legislative decision to create a right of access to information. Whether or not that argument is true, it does not answer the Court's question. Even if the Act creates a statutory right of access to information, it cannot create a corresponding constitutional right. As the Court proceeded to point out to Plaintiffs, there is case law to support Defendants' position. Plaintiffs could argue that the Court is not bound by persuasive authority from other districts.

As noted earlier in this opinion, courts have recognized a derivative right to receive information, but they have been careful to note that this right is narrower than the right from which it originates. While an individual generally has a right to access information, there is no constitutional right to access information in the possession of the government. That is precisely what Plaintiffs are attempting to do in this case. Plaintiffs wish to obtain the names and temporary addresses of all absentee voters, even though the State Board of Elections keeps this information confidential until after the election. Because Plaintiffs do not have a constitutional right to access this information, there is no First Amendment infringement in this regard either.

Having concluded that none of Plaintiffs' First Amendment rights have been infringed, the Court finds that Plaintiffs have not demonstrated a strong likelihood of

success on the merits of their claims.[2]   Although this factor often determines the outcome of motions for preliminary injunctions, particularly in First Amendment cases, the Court will proceed with the analysis so that it may properly balance all factors.

### 2.      Potential for Irreparable Harm to Movant

As noted earlier in this opinion, deprivation of a movant's First Amendment rights, even for minimal periods of time, is sufficient to establish the possibility of irreparable harm. In a case such as this one, where Plaintiffs have failed to demonstrate a strong likelihood of success on the merits of their First Amendment claim, it follows that Plaintiffs have also failed to establish the possibility of irreparable harm. The Court buttresses this conclusion by noting, once again, that Plaintiffs simply may not find out which voters plan to vote via absentee ballots or where these ballots will be sent.   However, they are free to communicate with any and all registered voters within the 24th Senate District.  For these reasons, Plaintiffs have not shown that they will suffer irreparable harm unless the Court issues a temporary restraining order.

### 3.      Risk of Substantial Harm to Others and the Public Interest[3]

The United States Supreme Court recognizes that "a State has a compelling interest in ensuring that an individual's right to vote is not undermined by fraud in the election

---

[2]Although the parties spent a considerable amount of time arguing for the application of varying levels of scrutiny, the Court's analysis of the First Amendment claim will end here. Because Plaintiffs did not show that their First Amendment rights were infringed upon, there is no need to review the statute under any form of scrutiny.

[3]These are two separate factors, but there is some overlap between them in this particular case.  Defendants are government entities, and as such, they are charged with acting in the public's best interests.  Therefore, they are qualified to speak, not only about substantial harm that may come to their endeavors and to individuals throughout the Commonwealth, but also to the public interest as a whole.

process." *Burson v. Freeman*, 504 U.S. 191, 199 (1992). Accordingly, "[l]egislatures. . . should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively, provided that the response is reasonable and does not significantly impinge on constitutionally protected rights." *Munro v. Socialist Workers Party*, 479 U.S. 189, 195-196 (1986)). Given the importance of this interest, the Court has "never held a State 'to the burden of demonstrating empirically the objective effects on political stability that [are] produced' by the voting regulation in question." *Burson*, 504 U.S. at 209 (*quoting Munro*, 479 U.S. at 195).[4]

Defendants argue that this is precisely the goal of the challenged statutes. In support of this argument, Defendants point to Secretary Grimes' testimony before the Senate State and Local Government Committee. Speaking on behalf of the House Bill 203's sponsor, Secretary Grimes noted that Kentucky has a history of vote buying, which is often perpetrated using absentee ballots. Secretary Grimes then argued that these provisions were intended to "free[ ] individuals who are requesting to vote via absentee from the fear or harm of being susceptible to vote buying or undue harassment or influence."

Plaintiffs attacked this proffered statutory purpose on three grounds. First, Plaintiffs contend that Secretary Grimes' statement was not relevant to the statutes being challenged here. Second, Plaintiffs question the severity of the vote buying problem, noting that cases

---

[4]In *Burson*, the Court considered the constitutionality of a statute prohibiting electioneering within one hundred feet of a polling place. The language quoted above comes from the Court's discussion of whether the statute served a compelling state interest. Although this Court did not apply strict scrutiny to the statutes at issue, these principles are still helpful to the Court in determining what interests are implicated in this case.

of vote buying seem to be concentrated in rural southeastern Kentucky. Third, Plaintiffs insist that existing criminal statutes adequately account for this interest. The Court will address each of these argument in turn.

Plaintiffs argue that the Court could not consider Secretary Grimes' testimony relating to House Bill 203 because that Bill was never signed into law. However, the very language that lies at the heart of this case was lifted from House Bill 203 and grafted onto House Bill 54. Although that Bill became law last year, Plaintiffs insist that the Court cannot consider Secretary Grimes' testimony because it referred to a bill that was never passed. The Court finds that this to be a pedantic distinction. Because the testimony refers to language that was eventually enacted into law, it provides valuable insight into the underlying legislative intent. Therefore, the Court found it appropriate to consider Secretary Grimes' testimony.

The Court also took judicial notice of the fact that twenty-eight vote buying cases have been prosecuted in the Eastern District of Kentucky since 2003.[5] These cases support Secretary Grimes' thesis. In many of these cases, candidates were very involved in vote buying schemes and often used absentee ballots to perpetrate election fraud. For these reasons, the Commonwealth has a significant interest in preventing election fraud. Because the aforementioned cases were prosecuted after the enactment of criminal statutes, the Court does not believe that these penalties alone are sufficient to protect the state's interests. Furthermore, this interest is not diminished simply because the underlying

---

[5]Plaintiffs questioned whether the Court could take judicial notice of this point. Although Plaintiff raised this point while arguing for the application of strict scrutiny, which the Court rejected, the Court will nevertheless point out that it may take judicial notice of its own record. *See* Fed. R. Evid. 201; *United States v. Doss*, 563 F.2d 265 (1977).

problem plagues some areas of the Commonwealth more than others. The Court would also note that all of those cases have been prosecuted after the enactment of statutes criminalizing vote buying. This suggests that criminal penalties are not enough to resolve the problem, and perhaps more proactive measures are necessary.

Having determined that the Commonwealth has a demonstrated interest in preventing election fraud, the Court must now consider whether release of the sought-after information would adversely affect those interests. While there is no indication that Plaintiffs will use this information inappropriately, Defendants point out that they cannot divulge the information to Plaintiffs only. To grant Plaintiffs access, Defendants would have to make the information public. Once released, that information is subject to use and misuse by any number of individuals. Absentee voters would be vulnerable to harassment, undue influence and property crime. The government's efforts to safeguard the integrity of the election process would be severely undermined. And the public's interest in free and fair elections would not be served. For these reasons, the Court believes that these two factors weigh in Defendants' favor.

V.     **Conclusion**

When analyzing a motion for preliminary injunction or temporary restraining order, district courts are directed to balance all four factors. In this case, there is no need to balance the factors because they all weigh against granting the requested relief. Plaintiffs have not met their burden of proving that they are likely to succeed on the merits of their claim, nor have they demonstrated that they may incur irreparable harm. On the other hand, Defendants have shown that issuance of an injunction could cause substantial harm to others and is not in the public's general interests. Therefore, Plaintiffs' Motion for

Temporary Restraining Order must be denied.

Accordingly, for the reasons set forth herein, **IT IS ORDERED** that Plaintiffs' Motion for Temporary Restraining Order (Doc. # 5) be, and is hereby, **denied.**

This 1st day of May, 2014.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\Opinions\Covington\2014\14-60 MOO denying P motion for TRO.wpd